Case number 16-3110. United States of America v. Cornell M. Jones Appellant. Ms. Schellinger for the appellant. Ms. Dinello for the appellate. Good morning. Good morning, your honors. May it please the court, Katie Schellinger on behalf of Cornell Jones. I would like to reserve a minute and a half of my time for rebuttal. It's extraordinary. It's extraordinary. I have never, in 13 years in this court, I have never seen a situation like this, where a person is admitting to having committed all of these crimes and they're pleading to one count. Maybe Mr. Grimm is like the greatest negotiator in history. Maybe that's what's going on here. Or maybe there's a problem with your case that you're trying to masquerade. Now, maybe you guys don't want to try cases anymore. Or I don't know what's going on here. But to say the least, this resolution on its face is grossly disproportionate to his conduct. They must be so afraid of trying cases against you that they're willing to take a one count plea here. These statements, found at pages 31 and 33 of the appendix, and many other equally egregious statements made by the district court while presiding over the proceedings below, are what is at the heart of this case. They led Mr. Jones to reasonably question the court's role in the proceedings. They violated rules 11 and 32. And they so impaired the court's objectivity and impartiality that the court relied upon clearly erroneous facts when calculating the guidelines range. As a result, Mr. Jones abandoned the benefits of his plea agreement, which affected his substantial rights and which requires this court to vacate. The agreement wouldn't have bound the district court as to sentence, correct?  So the ultimate outcome here was still a plea and the district court being able to impose a sentence, which is the same outcome on those points that would have been in place even if the district court had immediately accepted the agreement, correct? You're correct, Your Honor. But what Mr. Jones lost was the benefit of that agreement. And that agreement provided him with a written agreement and guarantee from the government that they would not further prosecute Mr. Jones or his father or his wife for any related conduct. Didn't the judge have the authority to reject the agreement? Did the judge not have that authority? The judge, Your Honor, obviously has the authority to reject a plea if the judge finds that it's an abuse of prosecutorial discretion. The judge's authority to review and object a plea agreement stems from the judge's sentencing authority. And as Judge Kavanaugh pointed out, this plea agreement had no impact whatsoever upon the judge's sentencing authority. And so we would contend here that the judge's review of the plea agreement exceeded his own constitutional authority because he was probing information that bore no relevance at all. When you say constitutional authority, is this a separation of powers argument or what constitutional defect do you think is here? Separation of powers, Your Honor. And while we're not appealing directly on that basis because the court never actually affirmatively rejected the agreement, we're looking to the court's conduct. When it reviewed the agreement, it reviewed the agreement, it analyzed the agreement, it pressed the prosecutor to consider pursuing additional charges. All of those aspects of the court's conduct were in excess of the court's constitutional authority. And although he didn't take that final affirmative step to reject the agreement, we would contend that that improper behavior by the court impacted Mr. Jones. And it impacted his ability to make a clear and unfettered decision as to what plea he should enter. Now what if you knew that there was no chance, as the government says, of further prosecution, therefore making the outcome exactly the same as it would have been had the original agreement been accepted? If that's true, if there is absolutely no chance, then of course the outcome would be the same and this request would be essentially moved. But the government's statement in an appeal that the government's not likely to prosecute further is not the same thing as a written guarantee. Right, and I agree with that and I'll question them about that. But if it were, that would... If it were, then it would seem that the plea without the agreement is not different at all from a plea pursuant to the agreement. And then we would move to our sentencing issues and we request that the court remand for resentencing on those. But before I get there, I'd like to focus on the voluntariness. Well, can I just ask you, do we need to reach the constitutional claim here? Well, the constitutional claim... I'm sorry, Your Honor, you mean with regard to the voluntariness of his plea? In other words, ordinarily we don't look at the constitutional issue if there's another way for the court to resolve it. Thank you for that clarification. No, we do not need to resolve it on a separation of powers issue. We contend that there are three separate ways that the court undercut or subverted the voluntariness of Mr. Jones's plea. The first is the conduct that the court engaged in that I discussed that implicates separation of powers concerns. But it's not technically a separation. It wouldn't be overturning on that constitutional issue. But the court's conduct, what it did, was it influenced Mr. Jones's impression of the role that the court played in the proceedings. And the court appeared to have abandoned its role as a neutral arbitrator and instead to have assumed a role that appeared to be prosecutorial. But in addition to that, we also assert that the court's conduct violated Rule 11 and violated Rule 32. Rule 11 prohibits judicial participation in plea discussions, and it's an unequivocal rule. The prohibition is applied broadly in order to implement the rule's primary purpose, which is to totally eliminate judicial pressure from the plea bargaining process. I'm still stuck on the impact, I guess, because if these things had occurred as you described them, and we agreed with that, and say the defendant had never pled, had gone to trial instead, and gotten hammered with a long sentence, multiple convictions, then I would see the impact of the problems you're describing from the intrusion on the executive's authority to negotiate the plea. But here, the impact, ultimately, and I'm probably repeating myself now, seems only to really turn on this potential future prosecution. Otherwise, there's no impact. We could accept everything you've said, or at least assume it arguendo, and still nothing really turns on that. And with respect, I would submit that the threat of potential prosecution is something that is important. Well, I agree with that, but ultimately the defendant decides to still plead, and you're not seeking even today to withdraw that, correct? No, we have decided to proceed in this fashion, to appeal it instead. But if you're looking at whether his substantial rights were actually impacted by the court's behavior, say that you find that all of the behavior by the court that we allege was improper, you find that it was, in fact, improper, then with this first argument, you look to see whether Mr. Jones' substantial rights were impacted. And they were impacted if there's a reasonable probability that Mr. Jones would not have entered that same plea absent the court's improper conduct. And we contend that there's a difference between entering a naked guilty plea without the benefit of the plea agreement. No matter how significant that benefit was, there was definitely a benefit to that plea agreement, and he would not have abandoned that benefit if the court had not engaged in this improper behavior. And because of that, his substantial rights were impacted, and the plea was rendered involuntary. Thank you, Your Honors. I'd like to reserve my remaining time for rebuttal. Thank you. Elizabeth Dinello for the United States. Good morning. Good morning. Appellants claim that he involuntarily entered what is called a naked guilty plea. Conflates what are two different issues. First, did he voluntarily give up his right to trial? And second, did he voluntarily give up a plea agreement? As for the first issue, there's no basis for finding that appellant involuntarily pleaded guilty. He wanted to plead to the information from the start. In fact, at the first hearing at arraignment, he tried even to enter his guilty plea at that point. Even now, as he notes today, he wants to plead guilty. He cites no evidence anywhere in the record of anyone pressuring him or inducing him to give up his right to trial. All indications are that he voluntarily chose to enter a guilty plea, and that's consistent with his statements at the Rule 11 plea hearing. His real beef is his decision to give up a plea agreement. And like Judge Kavanaugh, we are stuck on the impact. There's no link between any of the judge's conduct and his decision here, and from our perspective, there's no harm to the defendant. What about the possibility of future charges? Your brief says appellant has not been charged, and there is no reason to think that he will be charged with any additional offenses. And as the Supreme Court says many times, we don't usually trust vague promises from the government like that. Well, I can explain the reasoning behind that, but today I can go one step further, Your Honor, and I can state on the record, and if you want to remand, if you don't think it's appropriate, we can state this on the record in the district court, that the government intends to abide by its promises in the plea agreement and that we will not prosecute Cornell Jones further for the conduct in the statement of the offense. We will not prosecute Michelle Jones for any tax-related offenses committed prior to the signing of the plea agreement, which the record indicates at page 14 was signed sometime before the May 5, 2015, hearing. So I can make that representation. So as far as we're concerned, this really is all a moot issue. But if you'd like me to address further the judge's conduct here, we do not agree that there was any constitutional violation. Certainly the judge made some intemperate comments, particularly at that May 15 hearing, and we've heard them quoted today. But the chronology here is important in that shortly after that hearing, in the June 4 pleading that the government submitted, the government explained that, in fact, this wasn't an extraordinary disposition. This was typical of plea agreements in tax cases. The judge after that did not question the terms of the agreement. Although the judge did in the September 4 hearing request more information about the defendant's criminal history, about the sources of income, the judge did not suggest that he was going to even reject the plea agreement on that basis. In fact, later made clear that he had made no decision on the plea agreement. Moreover, the judge never got the opportunity to rule on the plea agreement. If he had rejected the plea agreement based on some of the concerns that appellant has quoted and that the judge expressed, we'd be squawking. This would be another FACR services appeal. But unlike in FACR services where the judge actually made a ruling that affected the government's prosecution of the case, here the judge's comments were just that. They were just words. And ultimately, appellant, some months later, January 2016, makes a decision to enter that plea. Are a judge's comments ever just words? Excuse me, Your Honor? Are a judge's comments ever just words? I grant you he had no formal order, but isn't there a bit more than just the force of moving air behind anything a judge says on the bench? Certainly, Judge Centella, if you were still on the district court bench, I'm sure no one would be saying that they were just words. And had the judge, certainly if the judge had talked about the impact on sentencing, if the judge had actually said something to indicate where the judge was going, but here the judge is not indicating what he's going to do. Unlike in, you had a question? I think I heard you say that in the interim there they informed the judge about plea bargains in tax cases. Did I hear you correctly? Yes, that was. Do I not remember correctly that this judge was for many years a tax prosecutor? He did, and it may well be that he had not focused on tax division policy or perhaps that tax division policy had changed since his years with Maine Justice. His years in the tax division. Yes, and that may be why when the prosecutor reminded him of tax division policy, he did not further question the specific terms of the plea agreement. With respect to the claimed violation of Rule 11C1, by the time the parties come to court, there is a plea agreement that has been signed. And the judge makes comments about his view of the terms of the plea agreement, but the plea agreement doesn't budge after that. We know of no case where a court has found Rule 11C1 error where there is already a final agreement. Now, certainly there are cases where courts have read Rule 11C1 broadly, despite the plain language that it prohibits only a judge participating in plea discussions. But we know of no case like this one. Furthermore, to the extent that Appellant suggests in his reply brief at pages 14 and 15 that any Rule 11C1 error automatically entitles a defendant to vacation of the plea, that position is contrary to the Supreme Court's 2000 ruling in Davila, a case that Appellant cites in his opening brief for a different proposition. In Davila, the Supreme Court held that Rule 11H, which is the harmless error provision of Rule 11, applies to C1 pleas. And here, any error would have been harmless in that the plea did not budge. And moreover, Appellant pledged that the agreement did not change, and Appellant pleaded guilty to the exact same offense that he had wanted to plead to all along. And there's nowhere in the course, the long course of this case, did Appellant suggest any interest in ever going to trial. Does the Court have any questions? You, just to make sure, you agree on a separate point that there was error at the sentencing? Yes. And that we need to remand to allow the acceptance of responsibility to be counted, correct? Yes, Your Honor. We do agree that remand is appropriate based on the clearly erroneous factual findings that were material to the judge's finding of no acceptance of responsibility. On the sentencing issue, just one final point that Appellant has raised for the first time in his reply brief, that is that the judge failed to consider his claim that his good works in the community entitled him to a lesser sentence. Again, because that is a new claim in the reply brief, we did not have the opportunity to address it, and it generally is not appropriate for a court to address a claim raised for the first time in a reply brief. In his opening brief, he just argued generally the judge had not given sufficient statement of reasons or failed generally to consider all the 3553A factors. That said, if the Court does remand, as we recommend, we think it would be appropriate for the district judge, and not only appropriate, but necessary for the Court to consider any non-frivolous reasons for mitigation. You said you don't think there was a Rule 11C violation here. Are you also arguing that there was no violation of Rule 32? Yes, Your Honor, we are. In that Rule 32 is limited by its plain language to a pre-sentence report. And in Gregg, the Supreme Court case, which talks about the purposes of Rule 32, the Court is again talking about the pre-sentence report. Here, the only violation alleged is at the September 4th hearing when the judge is eliciting from the prosecutor some of the details of Appellant's 1985 drug conspiracy conviction. That was a far cry from receiving a PSR or the equivalent of one, in that all that the prosecutor divulged were some of the bare-bone facts about that case. If you look at the pre-sentence report, you'll see that it's much more fulsome in terms of alerting the judge to the details of that case. We know of no case where Rule 32 has been read so expansively to include any information about Appellant's criminal history. And in any event, too, because the judge would have been entitled to look at the PSR, ultimately that did not affect whether or not the judge appropriately could have considered that information in assessing the plea agreement. We'd ask that the Court then remand for resentencing. Thank you. All right. Thank you. You are very precise. We'll even give you two minutes from the precision. If I may, I'd like to briefly address the point about the Rule 32 violation. The government has argued that the inquiry the Court conducted into Mr. Jones' criminal history did not cover, it was not as fulsome as the information that would have been provided in a pre-sentence report. And we would contend that while it is certainly not as fulsome as the full description that a judge receives in a pre-sentence report, it was very expansive and so expansive to have a prejudicial effect on the proceedings here. What about the government's point that you've now, given their representations, have everything you would have gotten from the plea agreement? Given that point, Your Honor, I actually would like to move on and briefly address the reassignment issue because I think I answered our position on that one when you asked earlier. We do request that this Court be reassigned to a different district court on remand. And the reason is that even if it is remanded solely for resentencing, the Court below demonstrated that it is unable to render fair judgment in this case when it relied upon clearly erroneous facts at sentencing to calculate the guidelines range. And it did so in the face of statements from both the government and defense counsel at sentencing that the facts it was relying upon were wrong. The Court's animus is even more plain when you consider the fact that these great pains that the Court took to deny Mr. Jones credit for acceptance of responsibility, if you consider that in light of the Court's self-proclaimed practice of awarding that same credit for acceptance of responsibility to criminal defendants who have gone to trial. And it's for those reasons that we request that this Court reassign the case on remand to a different district judge. Thank you, Your Honor. Thank you. The case will be submitted.
judges: Brown, Kavanaugh, Sentelle